IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RAFAEL M. CRUZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PNC BANK, NATIONAL ASSOCIATION, *et al.*, <br><br> Defendants. | CASE NO. 3:16-CV-292 <br><br> JUDGE THOMAS M. ROSE <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PNC BANK AND THE PNC FINANCIAL SERVICES GROUP'S MOTION TO DISMISS** |

## INTRODUCTION

The plaintiffs do not dispute the fundamental pleading requirement that they do not—and cannot—meet: Ohio Revised Code § 1707.43 imposes liability only where a defendant *participates in or aids the seller in making an unlawful sale* of unregistered securities. In twenty pages of briefing, the plaintiffs fail to make a single allegation that PNC aided in the sale of an unregistered security. Instead, they allege only a litany of complaints about how PNC engaged in normal commercial banking activities. Under Ohio law, providing banking services is not aiding the making of a sale of securities. The plaintiffs' argument that PNC seeks an "exemption" from section 1707.43 is simply wrong. Forty years of case law are to the contrary.

1

This Court recently dismissed a complaint based on the same statute and arising out of the same fraudulent scheme. In *Boyd v. Kingdom Trust Co.*, No. 3:16-CV-009, 2016 WL 6441411, at *3 (S.D. Ohio Nov. 1, 2016) (Rose, J.) ("*PENSCO*"), the Court—consistent with the 40 years of Ohio case law before it—dismissed a section 1707.43 claim on the pleadings because the plaintiff did not allege that the defendant engaged in anything other than routine commercial banking activities. The same result is dictated here.

## ARGUMENT

A.  **The Plaintiffs Fail To Allege That PNC Aided The Making Of A Sale Of Securities.**

Section 1707.43 does "not impose liability on anyone who aided the seller 'in any way,'" but only on a defendant "who aided the seller in any way *in making an unlawful sale or contract for sale*" of unregistered securities. *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, No. 2:03-md-1565, 2006 WL 2849784, at *10 (S.D. Ohio Oct. 3, 2006) (emphasis in original). Accordingly, Ohio courts have repeatedly held without exception that by permitting a depositor to engage in normal commercial banking activities, a bank does not aid the *sale* of securities under section 1707.43.

The plaintiffs do not allege that PNC did anything whatsoever to aid in the sale of unregistered securities. Rather, they allege only that PNC "allow[ed] its facilities to be used by Apostelos to conduct" illegal activities and that PNC acted as "the primary channel through which" Apostelos funneled his funds. (Opp. Br. at 1.) The alleged activities recited in the bullet points on pages 10–11 of the plaintiffs' opposition brief drive home the point. Every one relates to alleged actions PNC

2

allowed Apostelos to take regarding his accounts and what information PNC allegedly had when Apostelos conducted his transactions.  Not a single one hints that PNC had contact with the buyers of the securities; prepared any document used in the sales process; or participated in any sales activity.

These allegations stand in marked contrast to those needed to state a claim for participating in or aiding a seller in making a sale of unregistered securities. The Tenth District identified the following acts that went "beyond normal commercial banking activities" and might give rise to section 1707.43 liability:

- The bank referred the seller to its investment bank affiliate, which underwrote the unregistered securities;

- The investment bank affiliate acted as the lead underwriter in issuing the securities;

- The investment bank affiliate acted as financial adviser to the seller;

- The bank received 20% of the fees received by its investment bank affiliate for underwriting the notes; and

- The bank was the agent for a $75 million line of credit to the seller that was a condition to the issuance of the securities.

*Federated Mgmt. Co. v. Coopers & Lybrand,* 738 N.E.2d 842, 847–48, 850, 858, 862, 137 Ohio App.3d. 366, 373, 377, 387–88, 393 (Ohio Ct. App. 2000).  If proven, the court held, these facts could show that the bank "conceived, organized and directly participated in the underwriting of the" unregistered securities.  *Id.* at 862, 137 Ohio App.3d at 393.

Similarly, the Seventh District held that a bank that prepared a private placement memorandum for the sale of the securities could be liable under section 1707.43.  *Corporate Partners, L.P. v. Nat'l Westminster Bank PLC*, 710 N.E.2d 1144,

3

1150, 126 Ohio App.3d 516, 524 (Ohio Ct. App. 1998). And in *Hild v. Woodcrest Ass'n*, 391 N.E.2d 1047, 1056, 59 Ohio Misc. 13, 28 (Com. Pl. 1977), the court found an accounting firm liable under section 1707.43 when the seller hired it "to develop financial and investment information and to prepare a Private Placement Memorandum for the purpose of attracting potential investors" and contacted a number of its own clients (including the plaintiff) to solicit their interest in purchasing the securities. The plaintiffs do not come remotely close to making analogous allegations here.

**B.     The Plaintiffs Fail To Distinguish, or Diminish, The Well-Settled Case Law That Requires Participation In The Actual Making Of A Sale Of Securities For Section 1707.43 To Apply.**

In response to PNC's reliance on these cases, the plaintiffs respond that "PNC attempts to create an exhaustive list of potentially culpable conduct to fit under its fabricated exemption, but Ohio courts have considered several factors . . . and even those factors considered to date are not comprehensive." (Opp. Br. at 13.) That is, respectfully, an odd response. Parties turn to court precedent, as they must, for guidance in applying the law to the current (alleged) facts. The several court decisions discussed by PNC set forth numerous examples of the types of activities that would establish *participation in or aiding the sale* of securities, as opposed to providing traditional banking services. The plaintiffs do not even attempt to argue that PNC engaged in any of those activities.

At the same time, the plaintiffs fail to cite any cases in which a court allowed an action to proceed based on the allegations the plaintiffs make here. So, while no court has declared its list of activities "exhaustive," the authorities' exclusive focus

4

on examples of the financial institution's active participation in the sale of securities—combined with the absence of any authority supporting the plaintiffs' position—marks the boundaries of a bank's potential liability under section 1707.43. PNC falls well outside those boundaries.

Following these precedents, this Court, in *PENSCO*, rejected a nearly identical claim that "but for PENSCO's services, it would not have been possible for Apostelos to sell the Securities to Plaintiffs." 2016 WL 6441411, at *3. And the allegations are even weaker here than in *PENSCO,* where the defendant actually purchased the Apostelos securities on behalf of the plaintiff. The plaintiffs here do not allege that PNC was involved in the purchase or sale of securities at all.

The plaintiffs criticize, or attempt to distinguish, the cases cited by PNC, but their challenges are to no avail. *Hild* did not hold, as the plaintiffs allege (Opp. Br. at 15), that a defendant must actually induce a purchaser to buy securities for liability to attach. *See Federated Mgmt.*, 738 N.E.2d at 860–61, 137 Ohio App.3d. at 391 ("*Hild* did not adopt the other states' approach as the definitive test. Rather, the 'inducement' test is but one factor in determining liability under R.C. 1707.43."). Nor did PNC cite it for that proposition. What *Hild* did hold—correctly, and why PNC cited it—was for the now well-established principle, *see, e.g., Wells Fargo v. Smith*, No. CA2012-04-006, 2013 WL 938069, at *6, 2013-Ohio-855, ¶ 29 (Ohio Ct. App. Mar. 11, 2013); *PENSCO*, 2016 WL 6441411, at *3 (citing *Wells Fargo*), that the mere willingness of a bank to become a depository of funds does not amount to participation or aid under section 1707.43.

5

The plaintiffs further argue that dismissal of the section 1707.43 claim in *National Century* is not comparable because the defendant in that case simply "failed to act to prevent the fraudulent behavior." (*See* Opp. Br. at 17); 2006 WL 2849784. That proves PNC's point, because the pleadings in the two cases are in the same posture: complaints alleging that a bank failed to prevent fraud while failing to allege the bank engaged in sales activities.

Indeed, in their zeal to distinguish *National Century,* the plaintiffs appear to recognize the infirmity in their position, because they slip into their brief that PNC was the "primary conduit and accomplice" of the scheme and that it aided Apostelos in selling the notes. (*See* Opp. Br. at 17.) This contention is unfounded and improper. It is axiomatic that a party cannot rely on "facts" that are not pled in the complaint. *See, e.g., US Herbs, LLC v. Riverside Partners, LLC,* No. 1:15 CV 2557, 2016 WL 3090925, at *5 (N.D. Ohio June 2, 2016) ("Although argued in the brief, the complaint simply does not contain these allegations."); *Williams v. USW, Local 7697*, No. 1:09-cv-743, 2010 U.S. Dist. LEXIS 22295, at *11 (S.D. Ohio March 10, 2010) ("[F]or purposes of adjudicating the dismissal motions, the Court cannot consider factual allegations which Williams states in his brief but did not plead in the Amended Complaint"); *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 912 (S.D. Ohio 2008) ("In their brief, Plaintiffs further contend that Stein 'continued to exert managerial authority'. . . . However, the complaints contain no such allegations . . ."). Here, there are no allegations in the complaint

6

that PNC did anything of the sort that would distinguish this case from *National Century*.

The plaintiffs themselves quote at length portions of another decision that was part of the *National Century* litigation that explain precisely why their claim must be dismissed. (Opp. Br. at 7–8 (quoting *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 755 F.Supp.2d 857, 884–85 (S.D. Ohio 2010))). They note that section 1707.43 liability "'requires an act of participation or assistance in the sale.'" *Id.* "'Courts have held that § 1707.43 imposes liability on persons who introduce investment opportunities, serve as conduits of information, act as intermediaries in the exchange of money and securities, and arrange meetings between buyers and sellers,'" they further quote. *Id.* "'Ohio's imposition of secondary liability thus targets the sales transaction.'" *Id.* Exactly so.

The plaintiffs similarly try to distinguish *Wells Fargo*, arguing that "the mortgage services provided by AmeriFirst were not in any way tied to the actual sale of the illegal securities." (Opp. Br. at 18 (citing 2013 WL 938069, 2013-Ohio-855)). But again, the same is true here. As the *Wells Fargo* court held in rejecting the claim, the types of actions integrally tied to the sale of securities include underwriting the securities, "arranging or attending meetings between the investors and the sellers," and "actively marketing the security or preparing documents to attract investors." 2013 WL 938069, at *5–6, 2013-Ohio-855 at ¶¶ 28–32. No such allegations exist here. Instead, the plaintiffs allege only that PNC acted as "the primary channel through which funds from the purchase of

7

securities flowed." (Opp. Br. at 18.) *Wells Fargo* rejected as insufficient the near identical allegation that defendants had collected funds from the fraudster and distributed the funds to the plaintiff. 2013 WL 938069, at *2, 5–6, 2013-Ohio-855 at ¶¶ 8, 26–31. (If anything, the *Wells Fargo* allegations were stronger for the plaintiff, since the defendant directly dealt with plaintiff in distributing funds, something that did not occur here.)

Finally, the plaintiffs argue that *Boomershine v. LifeTime Capital, Inc.,* No. 22179, 2008 WL 54803, 2008-Ohio-14 (Ohio Ct. App. Jan. 4, 2008), is distinguishable because the banks' involvement did not occur until years after the securities were sold. (Opp. Br. at 19.) Yet whether the bank acted as a depository a day after the sale or two years later is not the salient question, but instead whether the bank actually assisted in *making the sale* in the first place. In *Boomershine,* the court granted summary judgment because the banks simply collected and held premiums, facilitated and collected payments, and distributed proceeds, all of which are typical commercial banking activities. 2008 WL 54803, at *2, 2008-Ohio-14 at ¶ 15. So too here, except, again, PNC had no contact with the buyers of the notes, whereas the institution in *Boomershine* did. *See id.*

### C. The "Red Flags" Are A Red Herring, Because They Do Not Bear On Whether PNC Aided In Making A Sale Of Securities.

The plaintiffs insist that their allegations that PNC ostensibly ignored "red flags" of fraud and acted in contravention of federal guidelines are somehow relevant to their claim. Why? Because, they argue, these allegations "demonstrate PNC's knowledge of Apostelos' Ponzi scheme and its participation in the unlawful

8

sale of the Unregistered Securities." (Opp. Br. at 20.)

As a preliminary matter, the plaintiffs do *not* allege in the complaint, as they argue in their opposition brief, that PNC knew of Apostelos' Ponzi scheme, nor could they. (*See* Compl.) Once again, the plaintiffs seek to slip in through the brief what they cannot allege in a complaint subject to Rule 11 pleading standards. Moreover, they do not allege that PNC knew Apostelos was selling unregistered securities— the only conceivably relevant knowledge question. And even if that allegation were made, they would need to allege that PNC actually assisted Apostelos in making sales of those securities, which they do not. The allegations are, at most, relevant to how PNC conducted standard depository banking activities, which are irrelevant to the plaintiffs' claim.[1]

### D. There Is No "Exemption" That PNC Must Plead As An Affirmative Defense. 12(b)(6) Dismissal Is Warranted, Just As In *PENSCO*.

The plaintiffs argue, in passing, that PNC must plead as an affirmative defense an "exemption" to section 1707.43 for normal commercial banking activities. (Opp. Br. at 12–14, 20.) But there is no "exemption" issue here. The issue is simply whether the plaintiffs have sufficiently pled the claim they assert. One need look no further than this Court's decision in *PENSCO*. The Court granted defendant's Rule 12(b)(6) motion on the same grounds asserted here, which could not have happened if there was an "exemption" that had to be pled as an affirmative defense.

---

[1] Despite the inappropriateness of doing so, the plaintiffs reiterate in their brief the allegation that PNC failed to file a Suspicious Activity Report ("SAR"). (Opp. Br. at 10.) The plaintiffs have no plausible basis to make this allegation, because a bank is prohibited from disclosing whether or not a SAR has been filed or any information that would reveal even its existence or non-existence. *See* 31 U.S.C. § 5318(g); 21 C.F.R. 21.11(k). That is why such allegations are off-limits in complaints. In any event, whether PNC did or did not file a SAR is similarly irrelevant to the question at hand.

*PENSCO*, 2016 WL 6441411, at *3 ("[T]he complaint does not contain either direct or inferential allegations that could support an inference that PENSCO's conduct went outside the scope of 'normal banking activities.' . . . Therefore . . . PENSCO's 12(b)(6) motion is granted.").

## **CONCLUSION**

Because the complaint is devoid of any allegations that PNC participated in or aided the sale of unregistered securities, it should be dismissed.

Date: December 8, 2016                    Respectfully submitted,

*/s/* Thomas D. Warren
Thomas D. Warren (0077541)
BAKER & HOSTETLER LLP
twarren@bakerlaw.com
Key Tower, Suite 2000
127 Public Square
Cleveland, OH 44114-1214
Telephone:   216.861.7528
Facsimile:   216.696.0740

*Trial Attorney for Defendants PNC Bank, National Association and The PNC Financial Services Group, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2016, a copy of the foregoing Reply Memorandum in Support of Defendants PNC Bank and The PNC Financial Services Group's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Thomas D. Warren
*Trial Attorney for Defendants PNC*
*Bank, National Association and The*
*PNC Financial Services Group, Inc.*
