UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RAFAEL M. CRUZ, et al., | : | Case No. 3:16-cv-292 |
| | : | |
| Plaintiffs, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| PNC BANK, NATIONAL ASSOCIATION, et al., | : | |
| | : | |
| Defendants. | : | |

**ENTRY AND ORDER GRANTING DEFENDANTS PNC BANK, NATIONAL ASSOCIATION AND THE PNC FINANCIAL SERVICES GROUP, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DOC. 14)**

This case is before the Court on the Motion to Dismiss (Doc. 14) pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants PNC Bank, National Association ("PNC Bank") and The PNC Financial Services Group, Inc. ("PNC Financial Services"). Plaintiffs Dr. Rafael M. Cruz, Dr. Gloria Cruz, and Dr. Rafael F. Cruz ("Plaintiffs") brought this putative class action lawsuit against PNC Bank and PNC Financial Services for alleged violation of the Ohio Securities Act, Ohio Rev. Code § 1707.01, *et seq*. PNC Bank and PNC Financial Services move to dismiss the Complaint for failure to state a claim on the grounds that Plaintiffs have not alleged that they engaged in anything more than ordinary banking activities, which Defendants contend are not actionable under the Ohio Securities Act. Defendants' Motion to Dismiss is fully briefed and ripe for review. (Docs. 14-1, 16, 18.) As more fully discussed below, the Complaint fails to allege conduct on behalf of Defendants that is sufficient to state a cause of action under the Ohio Securities Act and, therefore, the Court **GRANTS** the Motion to Dismiss.

**I.     BACKGROUND**

Plaintiffs allege that they are victims of a massive financial fraud perpetrated by William Apostelos and his wife, Connie Apostelos, with the assistance of his sister, niece and other associates. As alleged in the Complaint, between January 2010 and October 2014, the Aposteloses and their associates raised at least $66.7 million from at least 350 investors across the United States. (Doc. 1 at ¶ 2.) William Apostelos, who portrayed himself as a sophisticated investor and businessman, falsely represented to investors that their funds would be pooled with other funds and invested in real estate, stock, bonds, or precious metals, or used to make high risk loans to businesses and farmers. (*Id.* at ¶ 3.) Instead, the Aposteloses used investors' funds to operate a Ponzi scheme, in which early investors were paid fictitious returns on their investments with money received from later investors. (*Id.* at ¶¶ 3-4.) In October 2014, the Ponzi scheme collapsed when a group of defrauded investors forced William and Connie Apostelos into involuntary bankruptcy. (*Id.* at ¶ 5.)

In October 2015, a federal grand jury returned a twenty-seven count indictment against William and Connie Apostelos alleging that they operated various investment schemes that defrauded hundreds of investors of millions of dollars. (Doc. 1 at ¶ 1.) That criminal case, styled *United States v. William M. Apostelos, et al.*, Case No. 3:15-cr-148, is also pending before this Court.

Plaintiffs allege that the Defendants in this civil case—PNC Bank and PNC Financial Services—played an "indispensable role" in the success of the Aposteloses' fraudulent scheme. (*Id.* at ¶ 6.) According to Plaintiffs, the Aposteloses "deposited virtually all of the money" that they raised into one primary PNC business account (referred to as the "8143 Account") and paid "monthly interest payments" to investors from that account. (*Id.* at ¶ 6.) Plaintiffs also allege

that PNC allowed its facilities to be used by the Aposteloses to sell promissory notes and "membership unit certificates" in their investment portfolio, among other allegedly unlawful activities.  (*Id.* at ¶ 7.)

Plaintiffs allege that Defendants should have heeded "numerous telltale-warning signs of illegitimate and criminal conduct" and refused to engage in banking activities on behalf of the Aposteloses.  (*Id.* at ¶ 9.)  Plaintiffs allege that Defendants instead facilitated the transfer of more than $84,000,000 in investor funds to the Aposteloses and their affiliated companies, "approved and enabled" the Aposteloses to maintain the 8143 Account and at least eight other PNC accounts, provided the "banking infrastructure" for funds to be deposited in the Aposteloses' PNC accounts from anywhere in the United States, and provided the "banking infrastructure" for funds to be transferred from the Aposteloses' PNC accounts to "anywhere in the United States or other parts of the world."  (*Id.* at ¶ 8.)

The Complaint contains a single count against Defendants for the sale of unregistered securities in violation of the Ohio Securities Act, Ohio Rev. Code § 1707.01.  (*Id.* at ¶¶ 69-82.) Plaintiffs allege that the Aposteloses sold the unregistered securities to them and the members of the proposed class.  Plaintiffs contend that the Aposteloses and Defendants are jointly and severally liable to Plaintiffs and the proposed class for their purchases because Defendants "participated in or aided" the Aposteloses in making the unlawful sales.  (*Id.* at ¶ 77 (citing Ohio Rev. Code § 1707.43(a)).)

## II. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept as true all "well-pleaded allegations" in the complaint.  *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239,

246 (6th Cir. 2012). The court need not, however, accept "a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III. ANALYSIS

Plaintiffs' cause of action is premised on the allegation that Defendants "participated in or aided" the Aposteloses in the sale of unregistered securities in violation of the Ohio Securities Act. *See* Ohio Rev. Code §§ 1743(a); 1707.44(C)(1). Defendants argue that the Complaint should be dismissed because it alleges only that Defendants engaged in "standard commercial banking activities," not that they assisted in the sale of securities. (Doc. 14-1 at 4.) Defendants do not contest, at least for purposes of their Motion to Dismiss, that the Aposteloses sold securities that required registration under the Ohio Securities Act. (*Id.*)

Plaintiffs assert that the Aposteloses could not have perpetrated their fraud and completed their sales of unregistered securities without transferring large sums of money through PNC accounts with the Defendants' assistance. Plaintiffs also dispute Defendants' interpretation of the Ohio caselaw construing the Ohio Securities Act.

This Court recently dismissed a nearly identical complaint alleging the same cause of action under the Ohio Securities Act against another financial institution that the Aposteloses used to perpetrate their alleged fraudulent scheme. *See Boyd v. Kingdom Trust Co.*, No. 3:16-

CV-009, 2016 WL 6441411, at *3 (S.D. Ohio Nov. 1, 2016).  In that case, the plaintiffs also alleged that, but for the defendant's banking services, it would have been impossible for the Aposteloses to sell their unregistered securities.  *Id.* at *3.  The plaintiffs failed to make any allegation, however, that the defendant "acted outside the scope of routine banking activities," which Ohio courts have held do not subject financial institutions to liability under Ohio Rev. Code § 1707.43.  *Id.*  (citing *Wells Fargo v. Smith*, 2013-Ohio-855, ¶ 29 (Ohio Ct. App. Mar,. 11, 2013)).  The Court therefore granted the defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Plaintiffs here similarly argue that Defendants are liable for the Aposteloses' sale of unregistered securities under Ohio Rev. Code § 1743.  That provision states in relevant part:

> Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, ***and every person that has participated in or aided the seller in any way in making such sale or contract for sale***, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

Ohio Rev. Code § 1707.43(A) (emphasis added).  Plaintiffs premise liability on the legal contention that Defendants "participated in or aided" the Aposteloses in selling the securities at issue.  The relevant question then, here as in *Boyd*, is what allegations are sufficient to state a claim under this provision.

Ohio law governs the interpretation of the Ohio Securities Act.  *See Murphy v. Stargate Def. Sys. Corp.*, 498 F.3d 386, 391 (6th Cir. 2007).  Ohio courts have consistently held that banks engaged in normal commercial activity are not liable for aiding in the unlawful sale of securities under Section 1707.43(A).  *Smith*, 2013-Ohio-855, ¶ 29 (bank and its loan officer were

not liable under § 1707.43(A) where their actions did not go beyond "normal commercial banking activities"); *Boomershine v. Lifetime Capital, Inc.*, 2008-Ohio-14, ¶ 15 (Ohio Ct. App. Jan. 4, 2008) (defendants that collected and held premiums from investors, facilitated payments on insurance policies, and assisted in the distribution of insurance proceeds did not participate or aid in the sale of securities); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, No. 2:03-MD-1565, 2006 WL 2849784, at *11 (S.D. Ohio Oct. 3, 2006) (dismissing claims under Ohio Securities Act where plaintiffs failed to allege that bank participated in the sale of notes).

Plaintiffs identify the acts alleged in the Complaint that they believe constituted participating in or aiding the sale of securities. Plaintiffs allege, for example, that Defendants approved transfers of funds into and out of the 8143 Account, authorized overrides to account holds so that the Aposteloses could clear transactions faster, and adopted special rules to accommodate the Aposteloses' large withdrawals of cash. (Doc. 16 at 10 (citing Doc. 1 at ¶ 48.) None of these acts, however, went beyond "normal commercial banking activities." *Smith*, 2013-Ohio-855, ¶ 29. Nor did they directly assist the Aposteloses in making any sale of unregistered securities to Plaintiffs. *Cf. Federated Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.32d 842, 862 (10th Dist. 2000) (underwriting the sale of unregistered securities is participating in the sale of those securities under § 1707.43(A)).

Plaintiffs also argue that Defendants should be held liable because they failed to act on the Aposteloses' suspicious activity by filing a Suspicious Activity Report ("SAR") with federal officials or shutting down the Aposteloses' accounts. (Doc. 16 at 10-11.) This argument must be intended to appeal to a sense of equity, because Defendants' knowledge of the Aposteloses' fraud (or lack thereof) is irrelevant to the question of whether they assisted in the sale of illegal securities. In addition, as noted by Defendants in their Reply, the Complaint does not actually

6

contain any allegation that Defendants had actual knowledge of the Aposteloses' Ponzi scheme. (Doc. 18 at 9; Doc. 1.) On a Rule 12(b)(6) motion to dismiss, the Court is tasked with determining whether the allegations in the Complaint state a plausible claim for relief. The allegations that appear only in an opposing memorandum are not considered.

Plaintiffs also argue that Defendants claim entitlement to an "exemption" to liability under Section 1707.43, which must be pled as an affirmative defense. Defendants have not, however, cited to any exemption in the statute and the Court is not aware of any such statutory exemption that must be pled as an affirmative defense. The specific issue raised by Defendants' Motion to Dismiss is whether—reading the Complaint in the light most favorable to Plaintiffs—Plaintiffs plausibly allege that Defendants participated in or assisted the Aposteloses in the sale of unregistered securities. The Court concludes that Plaintiffs have not done so.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss (Doc. 14) and **DISMISSES** the Complaint (Doc. 1).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, January 10, 2017.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE